The West Chicago Street Railroad Company

*v.*

Marian Carr.

*Opinion filed December 22, 1897.*

1. Negligence—*what sufficient to go to jury on question of defendant's negligence.* In an action for injuries received by a passenger from a collision between a street car and a wagon, evidence that a bystander saw the danger and called to the driver of the car to stop, together with testimony showing the position of the tracks, the car and the wagon at and immediately before the collision, is sufficient to go to the jury upon the question of negligence.

2. Evidence—*action for negligence—extent to which plaintiff's declarations concerning injury are admissible.* Declarations of pain and suffering are competent only when made as part of the *res gestœ,* or to a physician during treatment, or upon an examination prior thereto to ascertain the nature and extent of the injury and without reference to a contemplated action for damages, unless the examination be made at the instance of the defendant, with a view to the trial.

3. Same—*when answer of physician to question concerning plaintiff's pain is hearsay evidence.* Where a physician, who had examined the plaintiff in a personal injury case shortly before the trial, is asked whether the plaintiff then suffered pain, his answer, "She tells me she suffers pain," should, on motion, be stricken out as hearsay.

4. Same—*physician may testify as to his charges for treatment, though plaintiff is a married woman.* The fact that the plaintiff in a personal injury case is a married woman residing with her husband does not render incompetent the testimony of her attending physician as to his charges for treating the injury, as under our statute she might be liable for such charges as well as her husband.

5. Appeals and Errors—*when failure to strike out improper answer will not work reversal.* Failure to strike out an improper answer of a witness will not work reversal, where, from the uncontradicted

evidence properly in the record, it appears that no different conclusion would have been reached by the jury had the objectionable answer been excluded.

6. SAME—*improper answer, afterward excluded, will not work reversal.* An improper statement of a witness in answer to a proper question, which is afterward stricken out on motion, will not work reversal on the ground that, though excluded, it had a prejudicial effect upon the minds of the jury.

7. DAMAGES—*loss of time and expense of medical attendance—when elements of damage.* The mere fact that the plaintiff in a personal injury case is a married woman residing with her husband does not exclude from the consideration of the jury, as elements of damage, her loss of time and expenses for medical attendance during the continuance of the injury.

*West Chicago Street Railroad Co.* v. *Carr,* 67 Ill. App. 530, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. THOMAS G. WINDES, Judge, presiding.

EGBERT JAMIESON, and JOHN A. ROSE, for appellant.

CRATTY BROS., JARVIS & CLEVELAND, for appellee.

Mr. JUSTICE WILKIN delivered the opinion of the court:

This is an action by Marian Carr to recover damages for personal injuries alleged to have been received through the negligence of the defendant, the West Chicago Street Railroad Company, while she was a passenger on one of its cars. The injury is alleged to have been occasioned by the driver negligently permitting the car to come in collision with a wagon. Whether the injury resulted from the negligence of the driver, as charged in the declaration, was the principal issue of fact in controversy before the jury. Upon the trial plaintiff recovered a verdict for $5700, and entered a *remittitur* for $1700 of the amount. Judgment was entered for the balance, $4000, and costs. The defendant appealed to the Appellate Court for the First District, where the judgment below was affirmed.

Three grounds of reversal are here urged: First, the trial court erred in refusing to instruct the jury to find for defendant; second, in admitting improper evidence; and third, in giving a certain instruction to the jury.

The first ground of reversal is based upon the position that there is no evidence in the record tending to establish negligence upon the part of the street car driver at the time of the injury. It was shown by the evidence that a bystander saw the danger of the collision and attempted to warn the driver by calling out to him. The testimony also showed the position of the tracks, the car and the wagon at and immediately before the collision. It is a fair and reasonable inference from this testimony that if the driver had exercised proper care he might have foreseen the danger, as did the bystander, and have avoided the accident by stopping his car. It cannot be said that the evidence, with all its reasonable inferences and intendments, wholly failed to prove the negligence charged, and the peremptory instruction to find for the defendant was therefore properly refused.

It is insisted the court erred in admitting testimony, first, by allowing the plaintiff to testify, in answer to a question, as to the condition of her health before the accident and afterward, the ground of the objection as stated being, that no facts were proved upon which to base her opinion. The question did not call for an opinion, nor did she give any opinion, on the subject of her health. She was asked to state the facts in that regard, which she did. There was nothing improper in the testimony.

A physician was asked to state the result of an examination made by him soon after the injury, and answered, among other things, that she had suffered an abortion. On the motion of counsel for defendant that part of his answer was stricken out, but it is said this did not cure the error, it being urged that the testimony had its prejudicial effect upon the minds of the jury upon the answer being made, and no subsequent exclusion of it could re-

move the injury.    Conceding the statement to have been improper, the position of counsel amounts to saying that whenever a witness makes an improper answer to a question the error can only be corrected in the trial court by granting a new trial.   But such a contention can scarcely be seriously insisted upon.

The same physician testified that he again examined the plaintiff shortly prior to the trial, but not with a view to testifying upon the trial, and, after describing her condition at that time, her counsel asked him whether she then suffered pain.    An objection to the question being overruled, he answered, "She tells me she suffers pain." Counsel for the defendant thereupon moved to strike out the answer, but the motion was overruled.    The attempt to justify this ruling is, that under the rule admitting declarations by an injured party to an attending physician the answer was original testimony.    It is said by Greenleaf in his work on Evidence, (vol. 1, sec. 102): "Where the bodily or mental feelings of an individual are material to be proved, the usual expressions of such feelings, made at the time in question, are also original evidence.    If they were the natural language of the affection, whether of body or mind, they furnish satisfactory evidence and often the only proof of its existence.    *   *   * So, also, the representation by a sick person of the nature, symptoms and effects of the malady under which he is laboring at the time are received as original evidence.    If made to a medical attendant they are of greater weight as evidence, but if made to any other person they are not on that account rejected."    The same rule is laid down in 1 Phillips on Evidence, (Edw. ed.) 182.

As will be seen from a note to the text in Greenleaf (5th ed.) there is much confusion, if not an irreconcilable conflict, in the decisions of the courts construing and applying the rule stated.    In the State of New York there has been a radical change in the rulings of the Court of Appeals on the subject, resulting from an enactment by

170—31

the legislature removing the disability of a party litigant to testify in his own behalf, the reasoning being that the necessity which formerly existed for the admission of declarations of pain and suffering no longer exists to the same extent as before the passage of that act, and it is there now held that evidence of screaming, groaning, etc., being the natural language of pain, is admissible, but that simple declarations of the injured party, not to a physician for the purpose of being attended professionally, but simply making the statements that he or she is then suffering pain, are not competent; and it is held that this ruling can work no hardship in case of the death of the injured party, for the reason that in such case suffering is not an element of damages. This ruling is criticised by the Supreme Court of the State of Indiana in that it makes a departure from the original rule upon the ground that the law of evidence has been changed in that State as to the competency of the party to testify in his own behalf, the Indiana court holding that a rule of evidence, under the common law, could not properly be changed for that reason. Decisions are to be found in many other States following, with more or less strictness, the respective views of these courts. There is uniformity, however, in the decisions upon several of the questions which enter into the proper construction and application of the rule. All agree that the declarations, to be admissible, must be confined to the statement or complaint or exclamation of present existing pain and suffering, and not to the past, nor to the manner and circumstances of receiving the injury; also that, under well recognized general rules of evidence, declarations so immediately connected with the infliction of the injury as to become part of the *res gestæ* are competent, and may be proved by any competent witness who may have heard them; also, that statements of the location of an injury and existing pain, made to a physician during treatment or upon an examination, and for the purpose of ascertaining the extent and nature of

the injury, if made without reference to future litigation, may be properly stated by the physician in giving his opinion of the nature, character and extent of the injury. And some cases hold that, whether the examination is made with a view to testifying upon a trial or not, such statements are competent, the jury being left to consider that fact in giving proper weight to the testimony; and still other cases seem to hold that like declarations are competent they being made to others than physicians, and not being so connected with the injury as to be part of the *res gestæ.*

We think, however, the correct rule to be deduced from that laid down by Greenleaf, and most conducive to justice, is, that such declarations, being in favor of the party making them, are only competent when made as part of the *res gestæ,* or to a physician during treatment, or upon an examination prior to and without reference to the bringing of an action to recover damages for the injury complained of, unless the examination should be made at the instance of the defendant, with a view to the trial. This view is in harmony with what we said in *Illinois Central Railway Co.* v. *Sutton,* 42 Ill. 438, as follows (p. 441): "A physician, when asked to give his opinion as to the cause of a patient's condition at a particular time, must necessarily, in forming his opinion, be to some extent guided by what the sick person may have told him in detailing his pains and suffering. This is unavoidable, and not only the opinion of the expert, founded in part upon such data, is receivable in evidence, but he may state what his patient said in describing his bodily condition, if said under circumstances which free it from all suspicion of being spoken with reference to future litigation, and give it the character of *res gestæ.*" See, also, *Collins* v. *Waters,* 54 Ill. 485.

Exclamations of pain so immediately connected with the injury as to come within the rule making them part of the transaction are competent, because they are the

natural expressions of bodily agony and suffering, and are, in a sense, evidence of acts, expressed in words. It is not so much what the sufferer says, as the fact of giving audible expression to suffering. A groan, a sigh, a scream, or other involuntary audible exhibition of pain, conveys to the mind the same impression as contortion of the features, writhing, struggling or other physical manifestations of agony. Therefore any competent witness to such exclamations or exhibitions of pain and suffering may certainly be allowed to testify to them without injury to the opposing party, and, of course, as part of the *res gestæ*, statements as to the manner of inflicting the injury, the location of the injury and the pain and suffering are also proper to be proved by any competent witness. We think, however, that to carry the rule so far as to permit either physicians or others to testify to declarations made so long after the infliction of the injury as to be no part of the *res gestæ*, not during treatment or attendance upon the injured party, or not upon an examination by a physician for the purpose of determining the nature, character and extent of the injury, would be to afford an opportunity to a party to manufacture evidence in his own behalf, and which, in at least most instances, could not be refuted or overcome. The adoption, broadly, of the rule contended for could only be justified upon the ground of necessity, as against all the general rules as to the competency of testimony, and we think, even in the absence of the statute making parties competent to testify, no such necessity exists. Nor do we think the rule laid down by Greenleaf, properly construed, is to be so understood. In this case the plaintiff unquestionably had the right to show, if she could, that she continued to suffer pain up to and during the time of the trial. The question put to the physician was not, therefore, objectionable. But his answer, "She tells me she suffers pain," under no construction of the rule was competent. In the first place, it was not responsive to the

question, and next, it was a mere declaration of the plaintiff in her own favor, confined to no particular time and without any indication as to the circumstances under which it was made. Of course, so far as shown by the facts the answer was no more competent because made by a physician than it would have been if made by any other person. It was hearsay, pure and simple, and we are unable to see upon what ground the ruling of the court in refusing to withdraw it from the jury can be sustained.

It is, however, insisted, and, we are inclined to think, with reason, that notwithstanding this error the judgment below should not be reversed. In the first place, the statement, to a jury of average intelligence, could have but little, if any, weight, being a mere declaration, "She tells me she suffers pain." The testimony, however, to the effect that the injury inflicted upon the plaintiff at the time was of a serious nature is uncontradicted. She was fully corroborated as to the fact that the collision of the car with the wagon crushed her between the seats, and she was taken out of the car and carried to a neighboring drug store in an unconscious condition. She testified, as she was competent to do, that she suffered pain from that time forward. Her physician testified that she suffered an internal injury, which, if it existed, any one could readily see must have produced more or less pain and suffering. In this view of the uncontradicted testimony we cannot bring ourselves to the belief that the improper answer of the witness above mentioned was of such a prejudicial character as that a different result would have followed had it been excluded.

The attending physician was also asked: "Doctor, what is the amount of your bill for your services to Mrs. Carr, as physician, since this accident?" The question was objected to as incompetent and irrelevant. He answered that a reasonable charge would be $700. The ground of the objection to the question seems to be, that

inasmuch as the plaintiff was, at the time of the injury and during her treatment, a married woman residing with her husband, the latter alone was liable for her medical attendance, and that therefore in this suit the question of the value of such service was unimportant. There can be no question that under our statute removing the disabilities of married women a wife may, by contract express or implied, become liable for medical treatment for herself or even for her husband, so that the question which was asked did not call for an irrelevant answer. It asked for a fact which was proper to be considered, in connection with all the other testimony, in determining whether the wife, by her agreement or conduct, had made herself liable for the amount of the charges made by the physician. But, independently of this fact, section 15 of chapter 68 of our statute (2 Starr & Curtis' Stat. 1896, p. 2133,) makes the expenses of the family a charge upon the property of both husband and wife, or either of them, in favor of creditors therefor, and says in relation thereto they may be sued jointly or separately. It will scarcely be denied that medical attendance upon the family is a family expense, within the meaning of this statute, and we think under that section plaintiff could be held liable and sued separately for the reasonable charges of the physician. No objection was made to the answer.

At the instance of the plaintiff the court instructed the jury, if it found for her, in fixing the damages it should take into consideration all the circumstances concerning the case, so far as shown by the evidence, "the loss of time by the plaintiff, if any, occasioned by the injury, the pain she has suffered, if any, the money she has expended or become liable to expend, if any, in endeavoring to be cured of such injury, the business she was engaged in, if any, at the time she was injured, and the extent and duration of the injury." The principal objection urged to this instruction is the same as that made to the question put to the physician as to the amount of his charges for

treatment of the plaintiff, the contention being, that it was the duty of her husband to support her and pay for her treatment, and that her loss of time, if any, would only be in failing to attend to her household duties, for which he alone could sue. What we have already said will sufficiently dispose of the question as to the physician's charges. There is testimony, not very satisfactory, it is true, that the plaintiff was, prior to her injury, engaged in employment other than the mere performance of her household duties, such as needle-work on flags, and taking in washing. Section 7 of chapter 68 of our statute (Starr & Curtis, p. 2124,) provides: "A married woman may receive, use and possess her own earnings, and sue for the same in her own name, free from the interference of her husband or his creditors." We do not regard the instruction as a model to be followed in like cases, but are unable to see wherein it could have misled the jury to the defendant's prejudice, especially so for the reason that the instructions given at the instance of the defendant were full and explicit to the effect that "every item and element of damage claimed by the plaintiff must be shown by a preponderance of evidence in the case, and every item and element of damage which, in the judgment of the jury, is not sustained by a preponderance of the evidence should be disallowed." Under the plaintiff's instructions the jury were only authorized to allow damages for physician's bills or for loss of time, "if any," shown by the evidence, and in this kind of an action it is impossible to tell whether the jury allowed such items or not, the damages for the injury, pain and suffering being left to the discretion of the jury.

On the whole record we are of the opinion that the judgment of the Appellate Court should be affirmed.

*Judgment affirmed.*